## P. G. CAMARINOS *vs.* JOHN KIDWELL.

### EXCEPTIONS.

HEARING, JUNE 19, 1893.    DECISION, SEPTEMBER 14, 1893.

JUDD, C.J., BICKERTON J., AND COOPER, CIRCUIT JUDGE.

(Mr. Justice Frear being disqualified, having been of counsel, on request Circuit Judge Cooper sat in his stead.)

Under a contract for sale of "pineapples in good condition to weigh three pounds and upwards," defendant (the seller), weighed in the crown or top with the edible part. The Court charged the jury that "under the contract the defendant was obliged to deliver the plaintiff pineapples which include the fruit with the crown, and defendant had no more right to multilate the crown than the fruit itself." Held, no error, since the defendant is held to have admitted by weighing the crown with the fruit that the crown was a part of the "pineapple" sold, and it was left to the jury to find whether the crown was mutilated by defendant so that it deteriorated or spoiled the fruit part.

Evidence commented on, showing that the jury had data before them upon which to find a verdict for actual damage suffered by plaintiff and for loss of probable profits.

In an action by buyer against seller, if the seller fails to deliver the goods, the buyer may recover the difference between the contract price and the market value at the time and place of delivery.

### OPINION OF THE COURT, BY JUDD, C.J.

This is an action for damages for breach of a contract made by the parties on the 10th of April, 1890, wherein Kidwell agreed to sell to Camarinos for the term of thirty months from the 1st July, 1890, all the fine quality pineapples, viz., Sugar Loaves, Queens and Smooth Cayennes grown for sale by Kidwell, the pineapples to weigh three pounds and upwards and to be delivered at the store of Camarinos, in Honolulu, in good condition—Camarinos was to

pay 35 cents for every such pineapple delivered in accordance with the above conditions. At the first trial in the Supreme Court at the January term, 1892, the jury disagreed and were discharged. At the April term, 1892, the case was retried and the jury (two dissenting) found a verdict for the plaintiff Camarinos, $512.75 special damages and $750.00 for probable profits.

Two bills of exceptions have been allowed defendant. The first is to the ruling of the trial Justice allowing an instruction to the jury asked for by the plaintiff. The second is to the Justice's refusing to grant a new trial on the ground that the verdict was contrary to law and the evidence. There had been, previous to the contract in question, dealings between these parties respecting pineapples of which Mr. Kidwell was an extensive cultivator and Mr. Camarinos having a fruit store selling pineapples in Honolulu and also shipping them for sale to San Francisco.

Up to June, 1891, that is, for a period of about eleven months, Kidwell delivered pineapples to Camarinos in good condition as to weight and ripeness which he either sold here or shipped to California. The evidence for the plaintiff is to the effect that most of the pineapples delivered had been either poisoned by the insertion of a corrosive substance or acid which destroyed the growing ability of the "top" or "crown" or tuft of leaves on the summit of the pineapple, or that a sharp instrument had been thrust down into the middle of the crown, either of which caused the fruit to decay and spoil. Plaintiff claimed that the shipments to California showed a loss from decay of the pineapples which damaged him as found by the jury in the sum of $512.75.

The defendant denied using any corrosive substance or acid on the fruit, but admitted that he inserted a chisel in the crown of the fruit which removed its centre or growing point, while still growing, which he claimed tended to increase the size of the fruit and did no damage to the edible part. It was left to the jury to say whether the acts of the defendant caused the fruit to decay and damage the plaintiff.

Plaintiff refused, June 9th, 1891, to receive any more pineapples mutilated as alleged by the defendant, and no more were tendered thereafter by defendant. The plaintiff asked the following instruction, which was given :

" The jury is instructed that under the contract the defendant was obliged to deliver the plaintiff pineapples which include the fruit with the crown, and defendant had no more right to mutilate the crown than the fruit itself? "

It would seem at first reading of this instruction that the Court had taken from the jury the question whether a " pineapple " as a matter of fact was composed of the " crown" and the edible part together. If this was all that the Court said it would be erroneous, for the jury were the judges of the question as to what constituted a pineapple. But in the Court's charge it based this instruction that a pineapple included the crown with the fruit part, upon the admission of the defendant that in order to make up the contract weight of three pounds and over to each pineapple, he included the top with the edible part, and the Court said it was not an open question of fact to pass upon, because Mr. Kidwell had admitted that the crown was a part of what he had sold and what Mr. Camarinos had bought. And in regard to the cutting of the tops the Court left it to the jury to find on the evidence " whether the defendant cut the tops when they were half grown, with the idea of stopping the growth of the top and forcing the growth to enlarge and improve the fruit, and that such cuts would heal up (defendant showing fruit which had been treated in this way which had healed up), and if they found that it did not injure the fruit so that it was in ' good condition ' then defendant had done no damage to plaintiff—if plaintiff received his fruit in good condition and had the full advantage of the market price of the whole thing, the top and the pine itself." And the jury were also instructed that if on the preponderance of the evidence they found that the fruit delivered by defendant was deteriorated or spoiled through the acts of the defendant, they must find for the plaintiff. In short, the jury were told

that the crown was a part of the pineapple because defendant had so considered it, and that if defendant mutilated it so that it deteriorated or spoiled the fruit they might find for plaintiff. And we cannot see that the jury were misdirected by the instruction given, when the whole charge is considered.

It is contended on behalf of the defendant that the evidence does not sustain the verdict, in that the shipments for six months did not show a total loss—especially, because if they had resulted in total loss, the shipments would not have been continued for this period. All we say is that these facts were all left to the jury, and the explanation of Camarinos why he did object sooner to the condition of the fruit, was left to the jury.

It is claimed also that the jury found for the San Francisco price of the pineapples upon which there had been a total loss, whereas the law is, and the jury were so instructed, that the measure of damages was the difference between the contract price and the market price at Honolulu or San Francisco. In the case of the pineapples that were actually delivered, paid for and shipped by plaintiff to San Francisco, the damages were the price for which they would sell in San Francisco, that is, the contract price which had been paid and the profit thereon. In that part of the case relating to the damage, the plaintiff suffered by loss of profits to be made upon the pineapples during the remainder of the thirty months, that is, from June 9th, 1891, to 31st December, 1892, the rule was correctly laid down—that plaintiff's loss, if the contract was rescinded by defendant's wrongful acts, was the difference between the contract price (he not having paid it) and the selling price in San Francisco. "In an action by buyer against seller, if the seller fails to deliver the goods, the buyer may recover the difference between the contract price and the market value of them at the time and place of delivery." 5 Am. & Eng. Encyclo. of Law, p. 30; 2 Benj. Sales, Sec. 1335. Only a limited number of the choice varieties of pineapples could be sold here; it was contemplated that the

majority of them were to be shipped, and they were picked by Mr. Kidwell at the proper stage of maturity with this in view. The jury had data before it of the number of pine-apples likely to be ready for delivery during that period, and the average price for which they would sell in San Francisco. This evidence varied widely on the opposing sides, but it was before the jury with a proper instruction, and we cannot see that the verdict is not sustained by the evidence. The estimate of his anticipated profits, as made by the plaintiff, was far in excess of the verdict. The jury undoubtedly considered the perishable nature of the fruit and its liability to loss and the uncertainty of its market according as it was stocked or not with other fruit. There was no contract of re-sale by Camarinos shown. He says he consigned the fruit to his brother in San Francisco, who sent him California fruit in exchange, and that once a year they settled accounts. The account sales shown by defendant of pineapples shipped by him during the period in question showing much less profit, is not conclusive, for the reason, that the ordinary or Hawaiian pineapples were included in the consignments with the best qualities, the subject of this contract and the prices realized from each are not separated. The evidence in this case was voluminous; the trial occupied three days and it was exhaustively tried, and we find no reversible errors disclosed.

Exceptions overruled.

*P. Neumann* and *C. Creighton,* for plaintiff.

*F. M. Hatch, Thurston & Frear,* for defendant.